Good morning. My name is Jeremy Warren, and I'm appearing on behalf of the appellant, Juan Rodriguez, who is serving a 30-year sentence imposed by the district court. It's in some ways a very straightforward case. In other ways, I hope the court looks at the seriousness of the sentence, because this case, frankly, involves a violation of the parsimony principle under 3553. And just when you boil it down, it's just, frankly, the sentence was just way out of proportion with the conduct, the background, the history of the defendant in the case. And it was understandable, given the length of time that the case proceeded before the district court, Mr. Rodriguez was the last of 37 defendants to plead guilty. There were others who were sentenced after him. He was, over four years of litigation, was constantly referred to as the head of this organization. It seems that he was. Well, the district court made that finding. Right. And that's not clearly erroneous. I believe that what that particular finding, we're not challenging Judge Houston's decision that he was the head. What I think that the problem with the sentencing in that case, there were several, but it was an unusual organization. These aren't, we're not dealing with IBM or companies that have very rigid hierarchies in executive structure. As the government acknowledged throughout the case and in their briefing, there were two other defendants who were, frankly, childhood friends of Mr. Rodriguez, who were, if not equally involved, perhaps just slightly less involved. They were, this is Mr. Balderas and Ochoa. And they had How much time did they get? Well, they got substantially less. They got serious sentences. One got 20 years, and one got 17 and a half, 240 and 210 months. And your argument is that because of those sentences, there's something wrong with the 30-year sentence your client got? Even if those gentlemen hadn't received those sentences, we would still argue that it was just simply an excessive sentence under the 3553 factors. But, yes, because one of the 3553 factors is sentencing disparity among similarly situated defendants with similar How similarly situated were they? Very. They were, these were, as far as I understand, first offender, criminal history category one, individuals who were almost equally involved in the distribution in the North County of San Diego. When you say almost equally, I mean, the district court went on at length about how Mr. Rodriguez managed relations with the customers, managed relations with the suppliers, directed the people who were buying and selling and distributing, and was sort of on top of this whole organization. Were they doing the same thing, or was that Mr. Rodriguez's sole, that was his area, and they were following his direction? They were doing the exact same thing. And the government, I think, would concede that Mr. Balderas and Mr. Ochoa, part of the same group of people, had their own sources of supply of methamphetamine, cocaine, and marijuana, and their own distribution networks. And that there was overlap between Mr. Rodriguez and these two other gentlemen, because they would procure drugs from one another. So, for example, if Mr. Balderas was short, he would go to Mr. Rodriguez, and Mr. Rodriguez would go to them. You know, I've been calling this case to myself the Sopranos, because of how Mr. Soprano lived this normal life, took care of his kids, took care of his friends, ostensibly had a regular, non-criminal life. But on the other hand, you go behind that, and there's all sorts of major criminal laws being broken at his direction. I understand. And this is, frankly, not uncommon experience in the district court, is that the judges do have to weigh between the different parts of the personalities, the schizophrenic sides that we see in some of these cases. But what we do know is this. The government had a very long-term wiretap investigation. There were five months of wires. Several of those months were specifically of telephones that were controlled by Mr. Rodriguez. And we know that there was drug trafficking. But we also know that, what do we not find? There was no violence involved. There was no weapons. In fact, the only person relevant to this who had weapons at his house was Mr. I believe Balderas. It might have been Ochoa. And they found eight firearms at his house when they did a search warrant. At Mr. Rodriguez's house, they find no drugs. They find no guns. There's none of these phone calls that involve violence. That's different from the Sopranos, I would suggest. But if I were the sentencing judge, I might have gone along with the 20 years, given all those factors. But how can you say that what this sentencing judge did was wrong? And what can you point to? You can't point to a single finding of fact that's erroneous. I agree with the court. We argue, and I'll submit on the briefs, with regard to some of the procedural views in terms of the Mexican mafia connections and the gang connections. I agree that although the bulk of the testimony of the sentencing hearing dealt with those particular issues, that Judge Houston didn't mention them. I think the fact that he didn't mention them doesn't mean he didn't consider them, just like the fact that a judge mentions the 3553 factors and kind of goes down the list doesn't mean that they're really considering them all equally or in total. And what we do know is that under Cardi and these other cases, the Supreme Court in the Rita case said, look, you know, guidelines are advisory. But we're not taking away from the appellate courts their responsibility to review sentences. So you're saying it was just unreasonable. Is that what you're saying? I would agree with the court that the bulk of our argument is that it was just simply unreasonable. What standard of review do we impose on the district court sentence? It's an abusive discretion standard. And so you think it was an abuse? You know, that's a pretty heavy standard. Abuse means exactly that, abusive discretion. Why was this an abuse? This was the leader of a huge gang that was dealing drugs for years. I wasn't his attorney during the trial part, but what we do know from the record is that not only did the government offer Mr. Rodriguez a 20-year recommended sentence, ultimately it would have been a district court's call, throughout the case, literally for years, that even very close to trial, that there were only three or four defendants left, including Mr. Rodriguez's brother. And he was unwilling to accept responsibility. Well, no, actually, if you look at page 80 of the supplemental, pardon me, of Volume 2 of the excerpt of record from the appellant, in the sentencing memorandum, the trial counsel talks about how shortly before trial, the government offered a 20-year lid, in terms of recommendation, and that Mr. Rodriguez was prepared to accept it. The problem was that it was a package disposition, which we commonly do in the Southern District, and one or more of the other remaining defendants rejected that. So he tried to plead guilty. And, you know, he pled guilty, ultimately. What do you mean a package disposition? I'm sorry? You mean, like, three or four of them that all plead guilty and take the 20 years? A package disposition simply means that it's only available if every defendant takes a deal. How many, if all 37 plead? No. This was at the very end. So there were still some stragglers. Right. There were, I believe, four defendants, Mr. Rodriguez's brother and two others. It doesn't seem right that one person's ability to make a plea deal would be dependent on another person's giving up their right to go to trial. Well, I'm sure Ms. Robinson will agree. I mean, you'll have to ask her, because the government controls that. The government says package dispositions give the government some benefit in not having to try a case. And so they do it, and I think the courts have affirmed that. But what we do know is that Mr. Rodriguez was willing to plead, wanted to plead guilty, accepted responsibility, and at the end of the day, why we believe it's an unreasonable sentence, regardless of sentencing disparity and everything else, is you take a step back, and we have to promote respect for the law. You have an individual who's a nonviolent criminal history Category 1 drug trafficker, and when you add up all the drugs, it's maybe 10 or 20 kilograms of cocaine and methamphetamine. If I could interrupt you just for a moment to clarify. Sure. My understanding was this was within the guidelines range? This was at the low end of the guidelines? This is an unusual case because, Your Honor, it is correct. Not only was it the guy we're not challenging the calculation of the guidelines, and the judge, the district judge imposed the low end. I would suggest, although the facts are different and the reasoning is a little bit different, this Court has recently said that a low end of the accurately calculated guideline sentence was substantively unreasonable, simply too long in the Amesco case. Granted, it was in a legal entry context, and it had to do with the nature of the prior, but the point is that the precedent is there for this Court to say, look, this was an abusive discretion. It was simply too long for an offender who pled guilty, who wasn't involved in violence, and although he did have some very old misdemeanor conduct, and no criminal record is good, but he's a career, pardon me, first offender, and he received a sentence that's much more commensurate with a career offender for long-term recidivism and violence. None of those we're hearing is just simply too long. Unless there are any questions, I'll take a minute. Thank you, Counselor. Thank you. May it please the Court. My name is Alana Robinson. I'm an assistant U.S. attorney in the Southern District of California, and I represent the United States in this matter. I think the Court has accurately identified the only issue in this case, and that is, did the Court abuse its discretion when it imposed an allegedly unreasonable sentence against the leader of this organization? And although the defense would like to characterize this as just a nitty type of standard drug trafficking organization, in fact, the scope of the criminal activity was extensive. The PSR calculates the base offense level on a drug quantity that's reached by the drug equivalency tables for methamphetamine, cocaine, and marijuana of over 36 kilograms, excuse me, 36,000 kilograms of marijuana. So there's no question that this was a very substantial organization. The record is complete with references to the length of time that this drug trafficking organization was operating to the geographic scope, which ranged from Hawaii all the way to Florida, and points in between to the wide number of, excuse me, large number of participants. So this was clearly a very significant and serious crime. When we look at whether the judge imposed a reasonable sentence, we must look at the circumstances on the date of sentencing, September 19, 2009. At that point, Judge Houston had been presiding over this case for over four years. He had heard extensive motions. He had reviewed the wiretap applications. He had reviewed the wiretap recordings. He had sentenced 32 other defendants, of whom almost a third worked directly for the defendant, Juan Rodriguez, and for which the court found it was appropriate for a four-level enhancement. He was in a very good position to know what was a reasonable sentence for this particular defendant. Now, the defendant claims that the or contends that the district court did not give adequate deference or consideration to the 3553A factors. But the sentencing record is clear that the court spent an entire day. He cleared his calendar on September 19 to give a sentencing hearing. I think the particular argument, I guess, that he's making is that the sentence was greater than necessary to achieve the goals of sentencing, the parsimony probation. That is the defendant's argument. And the very last comment that the court makes after he summarizes all his reasons for the sentence is he says that it's not greater than, in his estimation, in his discretion, it is not any lengthier than necessary to achieve the goals of the sentencing guidelines. And when the court looked at those 3553A factors, he found that they were not mitigating factors, as the defense would like you to believe, but, in fact, were aggravating factors. The defense points to the fact that the defendant had no criminal history. And the court found, well, that's because he was pretty clever, as his nickname indicated. He surrounded himself and, in fact, took advantage of family members in their moments of weakness, of childhood friends, people who were loyal to him who wouldn't turn him in, and they were the ones who bore the brunt of the exposure to the criminal activity. And that was the explanation for why he didn't have any criminal history. He looked, the court looked at the personal characteristics of the defendant and was not impressed by those either. Much like Judge Wardlaw pointed out, it's like the Sopranos. He, on the one hand, looked like a wonderful neighbor who would help people out, but the court found when you look at what was going on here, he was getting that through illegal gains. It's not a mitigating factor at all. The court looked at the way he recruited and corrected others and found that to be an aggravating factor. All of the 353A factors just confirmed what the guideline range advised the court to do, which was to impose a sentence between 300 and 60 months to life. The court followed the government's recommendation, imposed the low end. But what about counsel's argument that the two, his two cohorts who had essentially the same types of functions in this organization received much less lower sentences? The government does not concede, although Mr. Warren thought we might. We do not concede. In fact, we disagree with the characterization that Mr. Balderas and Mr. Ochoa were similarly situated. They were not similarly situated. The only commonality is that like Mr. Rodriguez, Mr. Balderas and Mr. Ochoa had customers of their own. However, on the top of this entire organization was Juan Rodriguez. He had the managerial responsibility. He directed and controlled both Balderas and Ochoa, and that's clear from the record. There was information before the court that on, I think it was May 11, 2005, a time when Mr. Rodriguez was vacationing in Hawaii with his wife, Mr. Maher came to town, to San Diego, because he wanted to buy four kilograms of cocaine that was going to be supplied by Mr. Balderas through his source, Edgar Iglesias. Well, we knew that Mr. Maher was coming to town with $35,000 to buy this cocaine, so at Los Angeles Airport, he was stopped. The money was taken. He still wants to buy the drugs, but he doesn't have the money. So Mr. Balderas calls Mr. Rodriguez in Hawaii for permission to supply that cocaine to Mr. Maher without any money being paid up front in order to front him. Mr. Balderas didn't have the authority to make that decision himself. He had to call Mr. Rodriguez because he was the one in charge. They were not similarly situated. The manager overall was Rodriguez, and that's what Judge Houston found. The same thing can be said of Mr. Ochoa. On February 8, 2005, Mr. Ochoa was trying to give $16,000 in drug proceeds to Mr. Rodriguez for some drugs that he had purchased from Mr. Rodriguez. Mr. Rodriguez was in Disneyland that day. So they're talking on the phone, and Rodriguez is telling Ochoa, well, my brother Jesus Rodriguez will bring you that $16,000, but just make sure that he's already given the two pounds of methamphetamines to Terry Filsack before he gets the money. He's directing all of the drug distribution, as Judge Trott noticed. There is no question that the judge clearly found or had a reasonable basis to find that Mr. Rodriguez was not similarly situated to Mr. Balderas and Mr. Ochoa. I noticed that the PSR, the probation officer, he stated that the sentencing guidelines was 380 months to life. I think that is an error. In the probation office? Yes. You didn't think the correct calculation was? I think it's just a typographical error, Your Honor. Okay. That was on page 33, and the recommendation was 420 months? Yes. The probation office recommended not the low end. They recommended, I guess you might call it the mid-range. The court knew that that was an option. In fact, the probation officer was urging that, but the court said, no, I'm going to take into factor all the factors. I agree with the government, 360 months is appropriate, and that's what he opposed. The record is very clear that this judge took a lot of time and attention. He devoted an entire day to learning all the factors that could affect the sentence. It was a reasoned and appropriate sentence, and the government asked this court to affirm. Thank you. All right. Thank you, counsel. United States v. Rodriguez is submitted. United States v. Contreras is submitted on the briefs. United States v. Reynos Cruz is next.
judges: Trott, Wardlaw, Ikuta